IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00941-MEH

DARNELL EMERSON WASHINGTON, JR.,

    Plaintiff,

v.

STEVEN OWENS, in his individual capacity,
ADAM GINGRICH, in his individual capacity,
ANGLENA STEVENS, in her individual capacity,
JANE DOE, Head of Mental Health, in her individual capacity, and
JANE DOE, Head of Medical, in her individual capacity,

    Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Defendants Steven Owens, Anglena Stevens, and Adam Gingrich (collectively "Defendants") ask the Court to dismiss the causes of action brought against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Darnell Washington brings claims related to his conditions of confinement and his allegedly inadequate medical treatment during his incarceration at the Colorado State Penitentiary ("CSP"). The Court holds that Mr. Washington fails to state a claim against Warden Owens and Ms Stevens. Additionally, Officer Gingrich is entitled to qualified immunity on Mr. Washington's First Amendment and Fourteenth Amendment claims. However, the Court finds Mr. Washington's allegations against Officer Gingrich sufficient to plausibly assert an Eighth Amendment violation. Accordingly, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**BACKGROUND**

**I.    Facts**

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Mr. Washington in his Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Regarding the claims of inadequate medical care, Mr. Washington alleges he was unable to see a doctor between November 1, 2015 and August 25, 2016, which caused him to endure pain and suffering. Second Am. Compl. 4, ECF No. 16. When he visited a doctor on August 25, 2016, the doctor informed him that he would need surgery for growing lumps on his back.[1] *Id.* According to Mr. Washington, he has not undergone surgery, and the lumps are causing him pain and suffering. *Id.* Ms. Stevens—CHP's director of mental health—informed Mr. Washington that he has been getting inadequate treatment, because he "pissed off someone in administration and Mr. Owens." *Id.* at 5. According to Mr. Washington, the former director of mental health told Ms. Stevens not to give Mr. Washington adequate care, and Ms. Stevens gave the same instruction to her staff. *Id.* at 9.

On July 15, 2017, Mr. Washington swallowed a razor and attempted to hang himself, because his mental health had deteriorated. *Id.* at 5. This caused him to cough up blood and endure "massive pain." *Id.* It was not until after this incident that Mr. Washington received "adequate

---

[1] Although Mr. Washington alleges the doctor told him he would need surgery on August 25, 2017, the Court reasonably infers that he intended to allege this happened on August 25, 2016. In the next sentence Mr. Washington states that "almost a year later" he has not received surgery. Second Am. Compl. at 4.

2

care" from Ms. Stevens. *Id.*

Mr. Washington alleges that Mr. Owens—the warden of CSP—"is fully aware of the problem and continues to allow outrageous behavior . . . ." *Id.* at 5. According to Mr. Washington, Mr. Owens "houses all the mentally ill inmates but refuses to have mental health programs." *Id.* at 13.

Mr. Washington also takes issue with his conditions of confinement. On February 15, 2017, Mr. Washington told Officer Gingrich that he wanted to commit suicide. *Id.* at 5–6, 11. Officer Gingrich removed Mr. Washington from his cell and placed him in an observation cell in the back of the intake area. *Id.* The observation cell did not have toilet paper, which forced Mr. Washington to wipe himself with his shorts or shirt. *Id.* at 6, 11. He then placed his shorts or shirt in the toilet, and the toilet overflowed. *Id.* As a result, Mr. Washington ate and remained in a "cell full of human waste for hours." *Id.* Officer Gingrich informed Mr. Washington that he was following basic orders to retaliate against him and keep him in the cell. *Id.* at 6, 11.

## II.     Procedural History

Mr. Washington initiated this case on April 17, 2017. Compl., ECF No. 1. Pursuant to an order issued by the Honorable Gordon P. Gallagher, Mr. Washington filed the operative Second Amended Complaint on August 8, 2017. Second Am. Compl., ECF No. 16. Mr. Washington alleges an Eight Amendment cruel and unusual punishment claim, a Fourteenth Amendment due process claim, and a First Amendment retaliation claim against Officer Gingrich and Warden Owens. *Id.* at 11–13. Mr. Washington asserts claims against Ms. Stevens for Eighth Amendment cruel and unusual punishment, a violation of the Americans with Disabilities Act ("ADA"), and intentional infliction of emotional distress ("IIED"). *Id.* at 9.

3

On October 30, 2017, Defendants responded to Mr. Washington's Second Amended Complaint by filing the present Motion to Dismiss, ECF No. 45. Regarding Mr. Washington's Fourteenth Amendment due process claims, Defendants contend the Court should analyze them under the Eighth Amendment. *Id.* at 4. Furthermore, Defendants argue that Mr. Washington's allegations do not give rise to a protected liberty interest in the conditions of his confinement. *Id.* at 4–6. As for the Eighth Amendment claims, Defendants assert Mr. Washington does not plausibly allege he was deprived of an objectively serious medical need or that Defendants were subjectively aware of an excessive risk to Mr. Washington's safety. *Id.* at 6–9. Defendants then argue that Mr. Washington does not allege the elements of his First Amendment retaliation claims, his ADA violation, and his claim for IIED. *Id.* at 10–13, 14–15. Finally, because Mr. Washington sues Defendants only in their individual capacities, Defendants assert entitlement to qualified immunity over the constitutional claims. *Id.* at 13–14.

Mr. Washington subsequently filed a response, which generally restates the allegations in his Second Amended Complaint. Resp. to Mot. to Dismiss, ECF No. 50. Defendants did not file a reply brief. Instead, Defendants filed a motion to stay this case pending the resolution of their Motion to Dismiss, which the Court granted. *See* Order Granting Mot. to Stay, ECF No. 52.

## LEGAL STANDARDS

### I. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II. Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's pleadings "liberally" and hold the pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit has interpreted this rule to mean:

> [I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

## **ANALYSIS**

The Court will separately address the claims against Officer Gingrich, Warden Owens, and Ms. Stevens. The Court first holds that Mr. Washington states an Eighth Amendment claim against Officer Gingrich. However, the Court finds that Officer Gingrich is entitled to qualified immunity on Mr. Washington's Fourteenth Amendment due process claim and his First Amendment retaliation claim. Then, the Court holds that Mr. Washington fails to allege facts supporting his claims against Warden Owens and Ms. Stevens.

**I.    Claims Against Officer Gingrich**

Mr. Washington asserts that Officer Gingrich violated his Fourteenth, Eighth, and First Amendment rights when Officer Gingrich placed him in an observation cell without toilet paper or running water "for hours." Second Am. Compl. 11–12, ECF No. 16. According to Mr. Washington, he was forced to wipe himself with his shorts, which caused the toilet to overflow. *Id.* He then remained in a "cell full of human waste for hours." *Id.*

A.    Eighth Amendment Cruel and Unusual Punishment

Mr. Washington contends that Officer Gingrich's conduct subjected him to cruel and unusual

punishment in violation of the Eighth Amendment. Second Am. Compl. 11. To hold prison officials liable for violating an inmate's Eighth Amendment right to humane conditions of confinement, two requirements must be met: (1) the deprivation must be objectively sufficiently serious such that it deprives the inmate of the "minimal civilized measure of life's necessities" and (2) "the official must exhibit 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

Construing Mr. Washington's allegation liberally, as the Court must at this stage, Mr. Washington pleads sufficient facts to establish both requirements. First, being left in an observation cell filled with human feces for hours is a sufficiently serious deprivation. "Human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to [it].'" *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("[E]xposure to human waste carries particular weight in the conditions calculus."). Construing liberally Mr. Washington's allegation that he was placed in the cell "for hours," Mr. Washington may have been surrounded by human feces for a sufficiently lengthy time to give rise to a constitutional deprivation. While it may not violate the Eighth Amendment to leave an inmate in a cell with human waste for a brief period of time, requiring that an inmate remain in such conditions for more than a few hours can constitute a constitutional

7

violation. *See DeSpain*, 264 F.3d at 974–75 (holding that leaving an inmate in a cell flooded with human urine and feces for thirty-six hours constituted a sufficiently serious deprivation); *see also Havens v. Clements*, No. 13-cv-00452-MSK-MEH, 2014 WL 1213804, at *6–7 (D. Colo. Mar. 24, 2014) (holding that an inmates' allegation that he was forced to lay in his own feces for hours "was sufficient to meet the objective prong of the Eighth Amendment analysis," notwithstanding that the inmate "was exposed to the unsanitary conditions for hours, as opposed to days . . . ."). Therefore, the Court finds that Mr. Washington has plausibly asserted an objectively serious deprivation underlying his Eighth Amendment claim.

Second, Mr. Washington pleads facts demonstrating deliberate indifference on the part of Officer Gingrich. Mr. Washington alleges that after the cell flooded, Officer Gingrich "came back there and told [him] he was following basic orders . . . ." Second Am. Compl. 6. Accepting this allegation as true, Officer Gingrich was aware that Mr. Washington was stuck in a cell filled with human waste, yet did nothing to remedy the situation. Courts have found that knowledge of an inmate's confinement in a cell with human excrement is sufficient to establish "deliberate indifference to the health risks presented by the flooding and lack of sanitation." *DeSpain*, 264 F.3d at 977; *Havens*, 2014 WL 1213804, at *7 (holding that the plaintiff's allegations were sufficient to establish deliberate indifference based on the fact that the defendants knew the plaintiff would likely have to lay in his own feces); *see generally Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Finally, the Court finds that Officer Gingrich's alleged conduct violated clearly established law. As discussed above, the Tenth Circuit has held that leaving an inmate in a cell flooded with human feces for a number of hours violates the Eighth Amendment. *DeSpain*, 264 F.3d at 974–75

8

(thirty-six hours); *McBride*, 240 F.3d at 1992 (seventy-two hours). To be sure, if Officer Gingrich presents evidence at summary judgment that the duration of Mr. Washington's confinement was significantly shorter than that suggested by Mr. Washington's allegations, Officer Gingrich may be entitled to qualified immunity at that time. However, Mr. Washington's allegations, construed liberally, plead a violation of clearly established law.

B.  Fourteenth Amendment Procedural Due Process Violation

Mr. Washington also alleges that Officer Gingrich's conduct violated his Fourteenth Amendment due process rights. Second Am. Compl. 9. The Court construes Mr. Washington's due process claim as alleging that Officer Gingrich's actions deprived Mr. Washington of a protected liberty interest.[2] *Id.* at 11. A prisoner possesses a protected liberty interest in the conditions of his confinement when the conditions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Estate of DiMarco v. Wy. Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007). In determining whether a liberty interest exists, courts consider whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate." *Estate of DiMarco*, 473 F.3d at 1342. Additionally, "the duration and degree of

---

[2] To the extent Mr. Washington contends Officer Gingrich violated his substantive due process rights, this claim is more appropriately analyzed as an Eighth Amendment violation. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.10 (10th Cir. 1998) ("Although plaintiffs generally invoke other constitutional amendments in their complaints, their claims concerning conditions of confinement 'remain[] bounded by the Eighth Amendment.'" (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (alterations in original))); *Lisco v. Creany*, No. 10-cv-02206-REB-BNB, 2011 WL 4345930, at *3 (D. Colo. July 28, 2011) ("The plaintiff's allegations raise issues solely related to the plaintiff's conditions of confinement and are appropriately analyzed as Eighth Amendment claims rather than due process claims.").

9

plaintiff's restrictions as compared with other inmates" is relevant to the court's analysis. *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999).

To assert a constitutional violation against a public official who has raised a qualified immunity defense, a plaintiff must demonstrate the official's conduct violated clearly established law. *See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010).

Here, the Court finds that Officer Gingrich is entitled to qualified immunity on Mr. Washington's procedural due process claim. Even if Mr. Washington alleges facts sufficient to demonstrate the conditions imposed an atypical and significant hardship, he does not cite (and the Court does not find) any Tenth Circuit or Supreme Court precedent holding that placing an inmate in an observation cell filed with feces "for hours" gives rise to a protected liberty interest. Indeed, although courts have found violations of the Eighth Amendment under similar circumstances, *see, e.g.*, *DeSpain*, 264 F.3d at 974, no precedent clearly establishes that such a brief confinement for the purpose of responding to a suicide threat constitutes a procedural due process violation.

To the contrary, courts have found that placing inmates in administrative segregation cells that were "smeared with human feces and urine and were flooded with water from a leak in the toilet on the floor above" did not "impose[] a significant hardship in relation to the ordinary incidents of prison life." *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). Accordingly, Officer Gingrich is entitled to qualified immunity on Mr. Washington's Fourteenth Amendment procedural due process claim.

C. First Amendment Retaliation Claim

Mr. Washington also alleges that Officer Gingrich placed him in the observation cell, because "his supervisors informed him to retaliate . . . ." Second Am. Compl. 11. To the extent Mr. Washington attempts to assert a retaliation claim against Officer Gingrich, he fails to state a claim. To plead a First Amendment retaliation claim, a plaintiff must allege he "was engaged in constitutionally protected activity." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). Mr. Washington does not identify a constitutionally protected activity that caused Officer Gingrich to retaliate. Indeed, Mr. Washington does not assert that he had previously filed grievances or lawsuits against Officer Gingrich. Mr. Washington's conclusory allegation that Officer Gingrich's supervisors informed Officer Gingrich to retaliate is insufficient to plausibly allege a First Amendment violation. As such, Officer Gingrich is entitled to qualified immunity on this claim.

## II. Claims Against Warden Owens

Mr. Washington alleges that Warden Owens violated his constitutional rights by permitting the medical department to remain "outrageously backed up." Second Am. Compl. 13, ECF No. 16. According to Mr. Washington, Warden Owens "is fully aware of the problem and continues to allow this outrageous behavior and dangerous practices . . . ." *Id.* at 5. The Court finds that Mr. Washington fails to plead violations of the Fourteenth, Eighth, or First Amendments against Warden Owens.

A. Fourteenth Amendment Substantive Due Process

Mr. Washington contends that Warden Owens violated his substantive due process rights by refusing to fix the inadequate system of medical care at CHP. Second Am. Compl. 13. However,

courts generally refuse to review inmates' claims for denial of medical treatment as Fourteenth Amendment due process violations. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (declining to review claims that inmates were denied necessary medical care as substantive due process violations); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.10 (10th Cir. 1998) ("Although plaintiffs generally invoke other constitutional amendments in their complaints, their claims concerning conditions of confinement 'remain[ ] bounded by the Eighth Amendment.'" (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (alterations in original))); *Conley v. McKune*, 529 F. App'x 914, 923 (10th Cir. 2013) (unpublished) ("[W]e have previously declined to review a substantive due process argument where a prisoner's claim of the denial of medical treatment was more accurately asserted under the Eighth Amendment."). Therefore, the Court declines to analyze Mr. Washington's claims for denial of adequate medical care as a substantive due process violation. Instead, the Court will address whether Mr. Washington asserts a violation of his Eighth Amendment right to be free from cruel and unusual punishment.

B.   Eighth Amendment Cruel and Unusual Punishment

Mr. Washington contends he is "holding the head warden responsible for being the supervisor of the prison." Second Am. Compl. 13. To assert an Eighth Amendment violation against Warden Owens in his supervisory capacity, Mr. Washington must allege "an 'affirmative link' between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). "A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996). "Liability of a supervisor

under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

Here, Mr. Washington does not allege that Warden Owens was deliberately indifferent to a known risk of substantial harm. Importantly, Mr. Washington does not allege facts suggesting Warden Owens had knowledge that the medical department was delaying treatment. Mr. Washington's conclusory allegation that Warden Owens "is fully aware of the problem," Second Am. Compl. 5, is insufficient to put Warden Owens on notice of the claims against him. Furthermore, even if the Court were to accept Mr. Washington's conclusory allegation, Mr. Washington alleges no facts plausibly suggesting Warden Owens knew that a "backed up" medical department would result in substantial harm to Mr. Washington.

This differentiates this case from *Green*, in which the court found that summary judgment in favor of the warden was improper. 108 F.3d at 1302–03. The court stated:

> Green's verified complaint, page 6, states that when Green had been returned to his cell after the beating, Green observed and heard prisoners tell Warden Reynolds "about the ruthless and vicious assault" and that Green had been beaten so badly he could not talk, that Green thought his leg and ribs were broken, and that Reynolds needed to go up and see Green. The complaint stated that Reynolds did not come to Green's cell and did nothing.

*Id.* Thus, the plaintiff alleged facts indicating precisely how the warden was put on notice that harm could result from failing to treat him. Nevertheless, the warden did nothing to help the plaintiff receive care. Here, in contrast, Mr. Washington does not allege facts establishing that Warden Owens knew of issues within the medical department that could result in Mr. Washington suffering substantial harm. Accordingly, Mr. Washington fails to state an Eighth Amendment claim against Warden Owens.

### C. First Amendment Retaliation

Mr. Washington alleges Warden Owens required that he receive inadequate medical care in retaliation for "asking for adequate treatment." Second Am. Compl. 13. To state a First Amendment retaliation claim, Mr. Washington must allege: "(1) that [he] was engaged in constitutionally protected activity; (2) that [Warden Owens'] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that [Warden Owens'] adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Shero*, 510 F.3d at 1203. Even assuming Mr. Washington establishes the first two elements, he does not plead facts plausibly suggesting that Warden Owens' refusal to remedy the backup in the medical department was substantially motivated by Mr. Washington's requests or complaints. Indeed, Mr. Washington does not allege that Warden Owens had knowledge of Mr. Washington's grievances, let alone that he denied Mr. Washington medical care in response to them.[3] *See Kendrick v. Penske Trasp. Servs., Inc.*, 220 F.3d 1220, 1235 (10th Cir. 2000) (holding that the plaintiff did not state a retaliation claim, because the defendant did not have knowledge of the protected activity). Accordingly, Mr. Washington fails to state a First Amendment retaliation claim against Warden Owens.

## III. Claims Against Ms. Stevens

Mr. Washington asserts three claims against Ms. Stevens, the director of mental health at

---

[3] Although Mr. Washington asserts in his response brief that he "informed the warden and his administration through the grievance system," Resp. to Mot. to Dismiss 8, ECF No. 50, merely filing a general grievance, without more, is insufficient to demonstrate that Warden Owens had knowledge of Mr. Washington's complaints of inadequate medical care. Furthermore, Mr. Washington does not allege that Warden Owens subsequently denied Mr. Washington medical care in response to the grievances.

CSP: (1) a violation of the Eighth Amendment, (2) a violation of the ADA, and (3) IIED. Second Am. Compl. 9, ECF No. 16. All of Mr. Washington's claims against Ms. Stevens arise out of his allegations that she refused him adequate treatment and informed her staff to deny him care. *Id.* at 9. The Court holds that Mr. Washington fails to state a claim against Ms. Stevens.

A. Eighth Amendment Cruel and Unusual Punishment

To prove an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must satisfy objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component requires that the plaintiff prove the defendant disregarded a known substantial risk of harm by failing to take reasonable measures to abate it. *Callahan*, 471 F.3d at 1159.

Even assuming that Mr. Washington's needs for surgery and mental health treatment are objectively sufficiently serious, Mr. Washington does not allege that Ms. Stevens had knowledge of a substantial risk of harm. In attempting to meet his burden, Mr. Washington asserts that Ms. Stevens understood how to treat his problem, but still refused to offer care. Second Am. Compl. 9. Furthermore, Mr. Washington contends Ms. Stevens told Mr. Washington that he was not receiving treatment, because he "had pissed someone off upstairs." *Id.* However, even accepting these allegations as true, they do not demonstrate that Ms. Stevens knew Mr. Washington would suffer substantial harm if he did not receive medical care.[4]

---

[4] Mr. Washington's response brief asserts that Ms. Stevens was fully aware of his mental health illness and how dangerous it is not to treat it. Resp. to Mot. to Dismiss 1, ECF No. 50. However, the Court cannot accept this conclusory allegation as true. *Ashcroft v. Iqbal*, 556 U.S.

15

Although knowledge of Mr. Washington's suicide attempt would certainly put Ms. Stevens on notice that failing to treat the mental health condition could result in substantial harm, Mr. Washington does not allege that Ms. Stevens refused him treatment after the suicide attempt. To the contrary, the Second Amended Complaint suggests that Ms. Stevens provided adequate care once she learned of the suicide attempt. *Id.* at 5 ("I had to go through this and almost die before I received adequate help from Ms. Stevens.").

Because Mr. Washington does not allege that Ms. Stevens disregarded a known risk of substantial harm, Mr. Washington does not plead an Eighth Amendment claim against Ms. Stevens.

B. Americans with Disabilities Act Violation

Mr. Washington next contends that Ms. Stevens' failure to treat Mr. Washington violated the ADA. Second Am. Compl. 9. To state a violation of Title II of the ADA, Mr. Washington must allege that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1194 (10th Cir. 2007). None of Mr. Washington's allegations give rise to an inference that he was denied medical care because of his mental health disability. Instead, Mr. Washington contends he was denied care, because he "had pissed someone off upstairs." Second Am. Compl. 9. Accordingly, Mr. Washington fails to plead a violation of the ADA.

C. Intentional Infliction of Emotional Distress

Lastly, Mr. Washington alleges that Ms. Stevens is liable for IIED. To assert a claim for

---

662, 678 (2009). This bare assertion does not put Ms. Stevens on notice of when and how she learned that it would be dangerous not to treat Mr. Washington's condition.

IIED under Colorado law, an individual must plead "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). Even assuming Ms. Stevens' decision to deny Mr. Washington medical care constituted extreme and outrageous conduct that caused him severe emotional distress, Mr. Washington does not allege facts supporting the notion that Ms. Stevens intended to cause Mr. Washington severe emotional distress. As such, Mr. Washington's IIED cause of action against Ms. Stevens fails to state a claim.

## CONCLUSION

In sum, Mr. Washington fails to allege a plausible constitutional violation against Warden Owens and Ms. Stevens. As such, Warden Owens and Ms. Stevens are entitled to qualified immunity. Mr. Washington also does not plead facts supporting a violation of the ADA or a claim for IIED against Ms. Stevens. To the extent Mr. Washington asserts procedural due process and retaliation claims against Officer Gingrich, Officer Gingrich is entitled to qualified immunity. However, Mr. Washington's allegations against Officer Gingrich, taken as true, plausibly establish a violation of Mr. Washington's Eighth Amendment rights. Accordingly, Defendants Owens, Gingrich, and Steven's Motion to Dismiss Second Amended Complaint [filed October 30, 2017; ECF No. 45] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 2nd day of February, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge